# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| CERNER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1033-CV-W-GAF |
| | ) | |
| VISICU, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT

Cerner Corporation hereby files its Complaint and Request for Declaratory Judgment against VISICU, Inc. as follows:

### THE PARTIES

1.      Plaintiff Cerner Corporation ("Cerner") is a Delaware corporation having its principal place of business at 2800 Rockcreek Parkway, North Kansas City, Missouri 64117.

2.      Defendant VISICU, Inc. ("VISICU") is a Delaware corporation having its principal place of business at 217 E. Redwood Street, Suite 1900, Baltimore, Maryland 21202.

### JURISDICTION AND VENUE

3.      This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, the patent laws of the United States, 35 U.S.C. § 1, *et seq*., the Lanham Act, 15 U.S.C. § 1051, *et seq*., and the common law of the State of Missouri.  There exists an actual and justiciable controversy between Cerner and VISICU.

4.      This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1338, 1367, and 2201.

1420286v1

5.     This Court has personal jurisdiction over VISICU, as VISICU has purposefully directed its activities to the State of Missouri and this district and has transacted business in the State of Missouri and this district by, *inter alia*, selling and/or offering to sell products and services within this district.

6.     Venue in this judicial district is proper under 28 U.S.C. §§ 1391 and 1400.

### THE '656 PATENT

7.     United States Patent No. 6,804,656 ("the '656 Patent") issued on October 12, 2004. The '656 Patent is entitled "System and Method for Providing Continuous, Expert Network Critical Care Services From a Remote Location(s)." A copy of the '656 Patent is attached as Exhibit A.

8.     The '656 Patent indicates on its face that Dr. Brian A. Rosenfeld and Dr. Michael Breslow are the alleged inventors of the '656 Patent and that VISICU is the alleged assignee of the '656 Patent. *See* Exhibit A.

9.     VISICU has represented to Cerner and others that VISICU is the recipient of the '656 Patent, that it "has certain exclusive rights under this patent," and that "[b]y receiving a grant of letters patent, VISICU now owns exclusive rights for a system providing and supporting 24/7 remote critical care." *See* Exhibits B-G.

### CERNER

10.     Cerner is a leading supplier of healthcare information technology.

11.     Cerner was founded in 1979 and employs over 3,000 physicians, engineers, scientists, and other associates in Kansas City alone.

1420286v1

12. Cerner's stated mission is to provide innovative software solutions and services that connect the appropriate persons, knowledge, and resources at the appropriate time and location to achieve optimal health outcomes.

13. In fulfilling its mission, Cerner has successfully developed and maintained valuable business relationships with more than 1,500 clients worldwide.

14. Cerner currently sells and offers to sell solutions related to the delivery of care to patients in intensive care units. These solutions will soon be implemented and used by Cerner's clients. Cerner intends to continue to lawfully sell and offer to sell those noninfringing solutions.

15. Cerner's and VISICU's solutions and services directly compete in the marketplace.

## BACKGROUND

16. Since October 12, 2004, the day the '656 Patent issued, VISICU has subjected Cerner and its officers, directors, clients, prospective clients, and others to: (1) unfounded allegations that they are infringing the '656 Patent; (2) threats and warnings that VISICU will aggressively pursue and initiate legal action against any and all alleged infringers of the '656 Patent, including Cerner; and (3) baseless assertions that Cerner's solutions will not reach the market as a result of VISICU's alleged patent rights.

17. Since the day the '656 Patent issued, VISICU also has engaged in an aggressive and systematic campaign of patent misuse, unfair competition, and tortious interference with Cerner's existing and prospective clients.

18. Cerner has filed this declaratory judgment action to defend itself and its clients from VISICU's baseless charges of infringement and to prevent VISICU from further

interfering with the valuable relationships between Cerner and its existing and prospective clients.

19.     Because Cerner's unique solutions clearly fall outside the scope of the '656 Patent, Cerner also seeks the Court's declaration that Cerner and its solutions do not infringe any claim of the '656 Patent, either literally or under the doctrine of equivalents.

20.     Further, Cerner seeks the Court's declaration that the claims of the '656 Patent are invalid in light of numerous prior art systems, methods, patents, and publications withheld from and/or not considered by the United States Patent and Trademark Office.

21.     Cerner also seeks the Court's declaration that the '656 Patent is unenforceable as a result of the acts, omissions, and inequitable conduct of Drs. Michael Breslow and Brian Rosenfeld – the alleged inventors of the '656 Patent and VISICU's founders – and/or those acting in concert with Drs. Breslow and Rosenfeld.

22.     Finally, Cerner seeks the Court's entry of preliminary and permanent injunctions against VISICU and an award of Cerner's damages resulting from VISICU's patent misuse, unfair competition, tortious interference, and other wrongful and anticompetitive acts.

### VISICU'S ALLEGATIONS, THREATS, AND WARNINGS

23.     On October 12, 2004, counsel for VISICU sent a letter by certified mail to Neal L. Patterson, the Chairman of the Board and CEO of Cerner.  *See* Exhibit B.

24.     On October 15, 2004, counsel for VISICU also sent letters by certified mail to current and recent members of Cerner's Board of Directors, including The Honorable John C. Danforth, Dr. William B. Neaves, Michael E. Herman, Nancy-Ann DeParle, and Dr. Gerald Bisbee, Jr.  *See* Exhibits C-G.

1420286v1

25.     The letters to Cerner's CEO and its current and recent Directors first assert that VISICU has engaged in a "review of [Cerner's] product offering."  Exhibits B-G.  The letters then assert, *inter alia*, that VISICU "has certain exclusive rights" in the '656 Patent and that "[u]nder U.S. patent law, 35 U.S.C. § 271, a patent entitles its owner to stop any entity from making, using, importing, selling or offering for sale a product that embodies any of the claims in the patent." *Id.*

26.     VISICU's letters to Cerner's CEO and Directors threaten that "anyone in the distribution chain, including the manufacturer, distributor, and user *will be liable for infringement, for non-VISICU licensed products made after the patent issue date*."  Exhibits B-G (emphasis added).

27.     The '656 Patent issued on October 12, 2004.  The solutions currently made, sold, and offered for sale by Cerner are *not* licensed by VISICU to Cerner.  Accordingly, VISICU has explicitly and unequivocally asserted in its letters that Cerner, its distributors, and its clients are currently liable for infringement of the '656 Patent and that VISICU will stop Cerner, its distributors, and its clients from making, using, selling, or offering to sell Cerner products.  *See* Exhibits B-G (stating that VISICU has reviewed Cerner's products, warning that "the manufacturer, distributor, and user will be liable for infringement for non-VISICU licensed products made after the patent issue date," and emphasizing that VISICU is entitled "to stop any entity from making, using, importing, selling or offering for sale a product" that infringes the '656 Patent).

28.     VISICU's letters to Cerner's Chairman and current and former Directors also threaten that "any company officer, or other individual, who participates in the decision to

manufacture, market or distribute can be *personally liable for damages*." Exhibits B-G (emphasis added).

29. Finally, VISICU's letters to Cerner's Chairman and current and former Directors assert that, as a result of Cerner's allegedly infringing activities, VISICU will seek injunctive relief and that Cerner will be liable for "monetary damages for lost profits, price erosion, convoyed sales, market spoilage, increased costs, accelerated market entry of competitors, reasonable royalties and costs of patent enforcement." *Id.*

30. On October 12, 2004, the day the '656 Patent issued, counsel for VISICU also sent a letter by certified mail to Randy Stasik, President of Borgess Health Alliance ("Borgess"). *See* Exhibit H.

31. Borgess is a ministry of Ascension Health, the largest nonprofit health system in the United States.

32. Borgess, Ascension Health, and Cerner have enjoyed a successful and mutually beneficial business relationship.

33. VISICU's letter to Mr. Stasik of Borgess states, *inter alia*, that "VISICU understands that you have installed, are currently installing, or have contracted to install a remote critical care system manufactured by Cerner." Exhibit H. The letter to Mr. Stasik further states that "[b]y receiving a grant of letters patent, VISICU now owns exclusive rights for a system providing and supporting 24/7 remote critical care." *Id.*

34. VISICU's letter to Mr. Stasik asserts that "[b]y having exclusive patent rights, *only VISICU licensed products may be freely utilized for providing remote critical care*." Exhibit H (emphasis added).

35.     The letter to Mr. Stasik also threatens that VISICU "*intends to aggressively pursue infringers* that continue selling or utilizing infringing products."   *Id*. (emphasis added).  As a result of VISICU's letter, assertions, and threats, Borgess expressed to Cerner its serious concern that VISICU will initiate a patent infringement lawsuit and obtain an injunction against Borgess and/or Cerner in the event Borgess uses Cerner's noninfringing solutions and services.  Cerner shares Borgess's concerns and apprehensions.

36.     On October 12, 2004, VISICU's Chairman and CEO, Frank T. Sample, sent a letter to Karen Barker, Vice President and Chief Information Officer of LifeBridge Health. *See* Exhibit I.

37.     LifeBridge Health and Cerner have enjoyed a successful and mutually beneficial business relationship for several years.

38.     VISICU's letter to Ms. Barker states, *inter alia*, that VISICU "has just received a United States patent on our eICU solution for remote care of the critically ill" and that "[b]y receiving a grant of letters patent, VISICU now owns exclusive rights for a system providing and supporting 24/7 remote critical care and only VISICU licensed products may be utilized to provide this innovative care delivery model." *See* Exhibit I.

39.     VISICU's letter to Ms. Barker warns LifeBridge Health to "carefully consider the pursuit of technology that allegedly claims similar offerings to that of VISICU's eICU solution" and threatens that "[t]o protect its interests, VISICU actively polices the market and *intends to aggressively pursue infringers* that continue selling or utilizing infringing products." *See* Exhibit I (emphasis added).

40.     VISICU has sent letters, e-mails, and other communications regarding the '656 Patent to other existing and prospective clients of Cerner.

41.     In addition to the repeated written threats and warnings that VISICU will aggressively pursue infringers, VISICU, its employees, and/or its agents also have, on information and belief, orally advised Cerner's prospective clients that the '656 Patent covers Cerner's solutions and that VISICU will use the '656 Patent to prevent Cerner's solutions from ever reaching the market.

42.     As a direct result of VISICU's false statements, misrepresentations, threats, and warnings, at least one prospective client of Cerner suspended discussions with Cerner regarding the purchase of Cerner's noninfringing solutions and services and expressed a reluctance to purchase Cerner solutions and services in the future.

43.     On November 9, 2004, Mr. Sample sent a letter to Mr. Patterson. *See* Exhibit J.  The letter from Mr. Sample was a "follow up" to the letter sent to Mr. Patterson from VISICU's attorney in which Mr. Patterson and others were threatened with personal liability for infringement of the '656 Patent.  *See* Exhibits B and J.

44.     VISICU and Cerner have never addressed the possibility of entering into a licensing agreement related to the '656 Patent.  VISICU and Cerner have never engaged in discussions or negotiations regarding the possibility of an amicable business resolution to the current controversy.   To the contrary, VISICU's written and oral assertions, threats, and warnings have made it clear that VISICU intends to resort to litigation by filing a patent infringement lawsuit against Cerner, its officers, its directors, and/or its existing and prospective clients if Cerner continues its lawful sales and marketing activities relating to Cerner's noninfringing solutions and services.

45.     VISICU's threats and warnings have created on the part of Cerner a reasonable apprehension that VISICU will initiate a patent infringement suit against Cerner, its

officers, its directors, and/or its current or prospective clients if Cerner continues its lawful marketing and sales activities. Such conduct by VISICU includes, but is not limited to: (a) VISICU's written and oral assertions, warnings, and threats to Cerner, its officers, its directors, and its current and prospective clients; (b) VISICU's false, unfounded, and baseless allegations that Cerner, its officers, its directors, and/or its existing or prospective clients are infringing the '656 Patent; (c) VISICU's false, unfounded, and baseless assertions that VISICU's officers and directors are personally liable for infringement and damages; (d) VISICU's threats, warnings, and assertions that VISICU will aggressively pursue any and all alleged infringers of the '656 Patent; (e) VISICU's threats, warnings, and assertions that the '656 Patent covers the Cerner solutions; and (f) VISICU's threats, warnings, and assertions that it will use the '656 Patent to prevent the Cerner solutions from ever reaching the market. *See, e.g.,* Exhibits B-G.

46. Accordingly, there exists an actual and justiciable controversy between Cerner and VISICU under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

## VISICU'S PATENT MISUSE, UNFAIR COMPETITION, TORTIOUS INTERFERENCE, AND INEQUITABLE CONDUCT

47. In addition to making the aforementioned allegations and threats, VISICU has engaged in patent misuse by making statements, assertions, and representations that are false, misleading, and misrepresent the scope and substance of the '656 Patent. On information and belief, such statements, assertions, and representations were made in bad faith and with improper purpose and include, but are not limited to, VISICU's assertion that only VISICU licensed products may be freely utilized for providing remote critical care. *See, e.g.,* Exhibit H. The '656 Patent, even if valid and enforceable, does not prevent others from freely using non-VISICU licensed products to provide remote critical care. The '656 Patent is unenforceable as a result of VISICU's patent misuse.

1420286v1

48. VISICU's false statements and misrepresentations regarding the scope and substance of the '656 Patent have had and will continue to have an anti-competitive effect.

49. In addition to its misuse of the '656 Patent, VISICU has engaged in unfair competition under the common law and under 15 U.S.C. § 1125 by, *inter alia*, making false and misleading representations of fact in commerce and commercial promotion which misrepresent the nature, characteristics, and qualities of VISICU's and Cerner's products, solutions, services, commercial activities, and intellectual property, including the '656 Patent.

50. VISICU's acts of unfair competition include, but are not limited to, VISICU's sending in commerce letters containing false and misleading statements and assertions to Cerner and its officers, directors, and current and prospective clients.

51. VISICU's wrongful conduct, misstatements, and misrepresentations have deceived and have a tendency to deceive a substantial segment of Cerner's existing and prospective clients. Further, VISICU's wrongful conduct, misstatements, and misrepresentations have influenced and are likely to influence the purchasing decisions of VISICU's and Cerner's existing and prospective clients. As a result, VISICU's wrongful conduct, misstatements, and misrepresentations have injured and are likely to continue to injure Cerner.

52. VISICU also has tortiously interfered with Cerner's contracts and business expectancies by, *inter alia*, misrepresenting in bad faith and with improper purpose the substance and scope of the '656 Patent and falsely asserting that Cerner, its officers and directors, its clients, and/or its prospective clients are infringing the '656 Patent.

53. VISICU has knowledge of Cerner's contracts and business expectancies. *See, e.g*., Exhibit H ("VISICU understands that you have installed, are currently installing, or have contracted to install a remote critical care system manufactured by Cerner.").

54.     On information and belief, VISICU intentionally, wrongfully, in bad faith, and without justification interfered with Cerner's contracts and business expectancies.

55.     VISICU's interference has induced and caused – and will continue to induce and cause – Cerner's current and prospective clients to suspend discussions and negotiations with Cerner regarding the purchase of Cerner's noninfringing products and services. On information and belief, VISICU's wrongful and unjustified interference is likely to cause Cerner's existing and prospective clients to refuse to purchase, implement, and/or use Cerner's solutions.

56.     Cerner had reasonable expectations of actual and potential economic advantage and commercial relations with its existing and prospective clients, and those reasonable expectations would have been satisfied absent VISICU's intentional, unjustified, and bad faith interference.

57.     Cerner has been damaged as a result of VISICU's intentional and unjustified interference with Cerner's contracts and business expectancies.

58.     The '656 Patent also is unenforceable as a result of the inequitable conduct of VISICU, its founders, its employees, its principals, and/or its representatives.

59.     During prosecution of the '656 Patent, on information and belief, Dr. Michael Breslow, Dr. Brian Rosenfeld, VISICU, and/or others substantively involved in the preparation or prosecution of the '656 Patent engaged in inequitable conduct before the United States Patent and Trademark Office ("PTO").

60.     On March 17, 2000, the alleged inventors of the '656 Patent, Drs. Breslow and Rosenfeld, conducted a telephone conference with Dr. M. Michael Shabot of Cedars-Sinai Medical Center in Los Angeles, California.  During that conference, Drs. Rosenfeld, Breslow,

and Shabot discussed a "rules engine" applied to multiple patient data elements stored in a database. The rules engine was developed and used by Dr. Shabot and Cedars-Sinai Medical Center in the early- and mid-1990s.

61. In April of 2000, Dr. Breslow and another VISICU representative met with Dr. Shabot at Cedars-Sinai Medical Center in Los Angeles, California. During that meeting, Dr. Breslow and Dr. Shabot discussed, among other things: (1) the rules engine developed and used by Dr. Shabot and Cedars-Sinai Medical Center in the early- to mid-1990s; and (2) a system and method developed and used by Cedars-Sinai Medical Center in Los Angeles, California for providing critical care services to multiple intensive care units and including the aforementioned rules engine.

62. Dr. Breslow, Dr. Rosenfeld, VISICU, and others substantively involved in the preparation and prosecution of the '656 Patent knowingly and intentionally withheld material information from the PTO including, but not limited to: (1) information regarding the system and method developed and used by Cedars-Sinai Medical Center in Los Angeles, California for providing critical care services to multiple intensive care units; (2) information regarding the rules engine developed and used by Dr. Shabot and Cedars-Sinai Medical Center as part of the aforementioned system; (3) U.S. Patent No. 5,942,986, entitled "System and Method for Automatic Critical Event Notification"; and (4) the patents and publications cited in U.S. Patent No. 5,942,986 including, but not limited to, the publication entitled "Decision Support Systems in Critical Care" (M. Michael Shabot & Reed M. Gardner, eds., 1994).

63. Such information became available to Dr. Breslow, Dr. Rosenfeld, VISICU, and/or others substantively involved in the preparation and prosecution of the '656

1420286v1

Patent at least as early as April of 2000, during prosecution of the '656 Patent and more than four years before the '656 Patent issued.

64. The information withheld by Dr. Breslow, Dr. Rosenfeld, VISICU, and others substantively involved in the preparation and prosecution of the '656 Patent was highly material and not cumulative to the information already before and/or considered by the PTO.

65. On information and belief, the material information withheld by Dr. Breslow, Dr. Rosenfeld, VISICU, and others substantively involved in the preparation and prosecution of the '656 Patent was withheld knowingly and with the intent to deceive the PTO.

66. In addition to the prior art and material information withheld from the PTO, there exist one or more prior art systems, methods, patents, and publications that render the claims of the '656 Patent invalid, including Cerner's own systems, methods, and publications.

## COUNT I – DECLARATION OF NONINFRINGEMENT

67. Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 66 of this Complaint.

68. Cerner has not infringed and is not infringing any claim of the '656 Patent, either literally or under the doctrine of equivalents.

69. Cerner has not contributed to infringement by others, or actively induced others to infringe, any claim of the '656 Patent.

70. Cerner is entitled to declaratory judgment of noninfringement in its favor.

## COUNT II – DECLARATION OF INVALIDITY

71. Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 70 of this Complaint.

72.     The claims of the '656 Patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

73.     Cerner is entitled to declaratory judgment that the claims of the '656 Patent are invalid.

## COUNT III – DECLARATION OF PATENT MISUSE AND UNENFORCEABILITY

74.     Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 73 of this Complaint.

75.     By asserting, *inter alia*, that only VISICU licensed products may be freely utilized for providing remote critical care, VISICU has impermissibly broadened the scope and substance of its alleged patent grant in bad faith, with improper purpose, and with anti-competitive effect.

76.     Cerner is entitled to declaratory judgment that VISICU has engaged in patent misuse and that, as a result, the '656 Patent is unenforceable until the patent misuse is purged and the effects thereof are dissipated.

## COUNT IV – DECLARATION OF INEQUITABLE CONDUCT AND UNENFORCEABILITY

77.     Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 76 of this Complaint.

78.     During prosecution of the '656 Patent, on information and belief, Dr. Michael Breslow, Dr. Brian Rosenfeld, VISICU, and/or others substantively involved in the preparation or prosecution of the '656 Patent engaged in inequitable conduct before the United States Patent and Trademark Office ("PTO").

79.     On March 17, 2000, the alleged inventors of the '656 Patent, Drs. Rosenfeld and Breslow, conducted a telephone conference with Dr. M. Michael Shabot of

Cedars-Sinai Medical Center in Los Angeles, California. During that conference, Drs. Rosenfeld, Breslow, and Shabot discussed a rules engine applied to multiple patient data elements stored in a database. The rules engine was developed and used by Dr. Shabot and Cedars-Sinai Medical Center in the early- and mid-1990s as part of a system and method for providing critical care services to multiple intensive care units and including the aforementioned rules engine.

80. In April of 2000, Dr. Breslow and another VISICU representative met with Dr. Shabot at Cedars-Sinai Medical Center in Los Angeles, California. During that meeting, Dr. Breslow and Dr. Shabot discussed, among other things: (1) the aforementioned rules engine developed and used by Dr. Shabot and Cedars-Sinai Medical Center in the early- to mid-1990s; and (2) the system and method developed and used by Cedars-Sinai Medical Center in Los Angeles, California for providing critical care services to multiple intensive care units and including the aforementioned rules engine.

81. Dr. Breslow, Dr. Rosenfeld, VISICU, and others substantively involved in the preparation and prosecution of the '656 Patent knowingly and intentionally withheld material information from the PTO including, but not limited to: (1) information regarding the aforementioned system and method developed and used by Cedars-Sinai Medical Center in Los Angeles, California for providing critical care services in the early- to mid-1990s; (2) information regarding the aforementioned rules engine developed and used by Dr. Shabot and Cedars-Sinai Medical Center; (3) U.S. Patent No. 5,942,986, entitled "System and Method for Automatic Critical Event Notification"; and (4) the patents and publications cited in U.S. Patent No. 5,942,986 including, but not limited to, the publication entitled "Decision Support Systems in Critical Care" (M. Michael Shabot & Reed M. Gardner, eds., 1994).

1420286v1

82. Such information became available to Dr. Breslow, Dr. Rosenfeld, VISICU, and/or others substantively involved in the preparation and prosecution of the '656 Patent at least as early as April of 2000, during prosecution of the '656 Patent and more than four years before the '656 Patent issued.

83. The information withheld by Dr. Breslow, Dr. Rosenfeld, VISICU, and others substantively involved in the preparation and prosecution of the '656 Patent was highly material and not cumulative to the information already before and/or considered by the PTO.

84. On information and belief, the material information withheld by Dr. Breslow, Dr. Rosenfeld, VISICU, and others substantively involved in the preparation and prosecution of the '656 Patent was withheld knowingly and with the intent to deceive the PTO.

85. Cerner is entitled to declaratory judgment that Dr. Breslow, Dr. Rosenfeld, VISICU, and/or others substantively involved in the preparation and prosecution of the '656 Patent engaged in inequitable conduct during prosecution of the '656 Patent and that, as a result, the '656 Patent is unenforceable.

## COUNT V – DECLARATION OF UNFAIR COMPETITION UNDER 15 U.S.C. § 1125

86. Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 85 of this Complaint.

87. VISICU has engaged in unfair competition under 15 U.S.C. § 1125 by, *inter alia*, making false and misleading representations of fact in commerce and commercial promotion which misrepresent the nature, characteristics, and qualities of VISICU's and Cerner's solutions, services, commercial activities, and intellectual property, including the '656 Patent.

1420286v1

88.     VISICU's wrongful conduct, misstatements, and misrepresentations have deceived and have a tendency to deceive a substantial segment of VISICU's and Cerner's existing and prospective clients. Further, VISICU's wrongful conduct, misstatements, and misrepresentations have influenced and are likely to influence the purchasing decisions of VISICU's and Cerner's existing and prospective clients. As a result, VISICU's wrongful conduct, misstatements, and misrepresentations have injured and are likely to continue to injure Cerner.

89.     Cerner is entitled to declaratory judgment that VISICU has engaged in unfair competition under 15 U.S.C. § 1125.

### COUNT VI – DECLARATION OF COMMON LAW UNFAIR COMPETITION

90.     Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 89 of this Complaint.

91.     VISICU has engaged in common law unfair competition by, *inter alia*, making false and misleading representations of fact in commerce and commercial promotion which misrepresent the nature, characteristics, and qualities of VISICU's and Cerner's solutions, services, commercial activities, and intellectual property, including the '656 Patent.

92.     VISICU's wrongful conduct, misstatements, and misrepresentations have deceived and have a tendency to deceive a substantial segment of VISICU's and Cerner's existing and prospective clients. Further, VISICU's wrongful conduct, misstatements, and misrepresentations have influenced and are likely to influence the purchasing decisions of VISICU's and Cerner's existing and prospective clients. As a result, VISICU's wrongful conduct, misstatements, and misrepresentations have injured and are likely to continue to injure Cerner.

1420286v1

93.    Cerner is entitled to declaratory judgment that VISICU has engaged in common law unfair competition.

<u>**COUNT VII – DECLARATION OF TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCY**</u>

94.    Cerner restates and alleges, as though fully set forth herein, the allegations contained in paragraphs 1 through 93 of this Complaint.

95.    VISICU has tortiously interfered with Cerner's contracts and business expectancies by, *inter alia*, misrepresenting in bad faith and with improper purpose the substance and scope of the '656 Patent and falsely asserting that Cerner, its officers and directors, its clients, and/or its prospective clients are infringing and/or will infringe the '656 Patent.

96.    VISICU had and has knowledge of Cerner's contracts and business expectancies.  On information and belief, VISICU intentionally, wrongfully, in bad faith, and without justification interfered with those contracts and business expectancies.

97.    VISICU's interference has induced and caused – and will continue to induce and cause – Cerner's current and prospective clients to suspend discussions and negotiations with Cerner regarding the purchase of Cerner's noninfringing products and services. On information and belief, VISICU's wrongful and unjustified interference is likely to cause Cerner's existing and prospective clients to refuse to purchase, implement, and/or use Cerner's solutions.

98.    Cerner had reasonable expectations of actual and potential economic advantage and commercial relations with its existing and prospective clients, and those reasonable expectations would have been satisfied absent VISICU's intentional, unjustified, and bad faith interference.

1420286v1

99.    Cerner has been damaged as a result of VISICU's intentional and unjustified interference with Cerner's contracts and business expectancies.

100.    Cerner is entitled to declaratory judgment that VISICU has tortiously interfered with Cerner's contracts and business expectancies.

## PRAYER FOR RELIEF

WHEREFORE, Cerner respectfully requests the following relief:

A.    Entry of judgment declaring that Cerner has not directly infringed and is not directly infringing any claim of the '656 Patent, either literally or under the doctrine of equivalents.

B.    Entry of judgment declaring that Cerner has not contributed to infringement by others, nor actively induced others to infringe, any claim of the '656 Patent.

C.    Entry of judgment declaring that the claims of the '656 Patent are invalid under 35 U.S.C. §§ 101, 102, 103, and/or 112.

D.    Entry of judgment declaring that VISICU has engaged in patent misuse and that, as a result, the '656 Patent is unenforceable.

E.    Entry of judgment declaring that the '656 Patent is unenforceable as a result of inequitable conduct.

F.    Entry of judgment declaring that VISICU has engaged in unfair competition under 15 U.S.C. § 1125.

G.    Entry of judgment declaring that VISICU has engaged in common law unfair competition.

H.    Entry of judgment declaring that VISICU has engaged in tortious interference with Cerner's contracts and business expectancies.

19

I.     Entry of a preliminary and permanent injunction enjoining VISICU, its subsidiaries, affiliates, officers, directors, agents, employees, assignees, and attorneys, and those persons or entities in active concert or participation with them who receive actual notice thereof, from threatening or initiating infringement litigation under the '656 Patent against Cerner or any of its clients, prospective clients, customers, subsidiaries, affiliates, officers, directors, agents, or employees.

J.     Entry of a preliminary and permanent injunction enjoining VISICU, its subsidiaries, affiliates, officers, directors, agents, employees, assignees, and attorneys, and those persons or entities in active concert or participation with them who receive actual notice thereof, from asserting, expressly or impliedly, that Cerner or any of its clients, prospective clients, customers, subsidiaries, affiliates, officers, directors, agents, or employees have infringed or are infringing the '656 Patent or any claim thereof.

K.     Entry of a preliminary and permanent injunction enjoining VISICU, its subsidiaries, affiliates, officers, directors, agents, employees, assignees, and attorneys, and those persons or entities in active concert or participation with them who receive actual notice thereof, from misrepresenting the scope and substance of the '656 Patent to Cerner's clients and/or prospective clients.

L.     An award to Cerner of its monetary damages incurred as a result of VISICU's patent misuse, unfair competition, tortious interference, and other wrongful acts.

M.     A declaration that this is an exceptional case under 35 U.S.C. § 285.

N.     An award to Cerner of its costs and reasonable attorney's fees incurred in this action.

O.     Such other and further relief as the Court may deem just and proper.

1420286v1

Dated: November 12, 2004                    Respectfully submitted,

                                            SHOOK, HARDY & BACON L.L.P.


                                            By ____/s/ B. Trent Webb_____
                                                  B. Trent Webb, MO Bar No. 40778
                                                  Bart A. Starr, MO Bar No. 52407

                                            2555 Grand Boulevard
                                            Kansas City, Missouri 64108-2613
                                            816.474.6550 Phone
                                            816.421.5547 Fax

                                            ATTORNEYS FOR CERNER CORPORATION