# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **CERNER CORPORATION,** ) | |
| ) | |
| **Plaintiff.** ) | |
| ) | |
| v. ) | Case No. 04-1033-CV-W-GAF |
| ) | |
| **VISICU, INC.,** ) | |
| ) | |
| **Defendant.** ) | |

## ORDER

Presently before the Court are two Motions to Dismiss filed by the Defendant, VISICU, Inc. ("VISICU"). (Doc. #6, #18). The Plaintiff, Cerner Corporation ("Cerner"), opposes both Motions. (Doc. #13, #32). In its first Motion to Dismiss, VISICU argues that Cerner's complaint should be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"). (Doc. #6). In its second Motion to Dismiss, VISICU contends that Count V of Cerner's Amended Complaint which asserts a claim arising under the Lanham Act, should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). (Doc. #18). Upon careful consideration of the facts and arguments presented by the parties, VISICU's Motion to Dismiss pursuant to Rule 12(b)(1) is DENIED. (Doc. #6). Furthermore, VISICU's Motion to Dismiss pursuant to Rule 12(b)(6) is also DENIED. (Doc. #18).

## DISCUSSION

**I.  Facts**

At issue in this case is the construction, infringement, validity and enforceability of U.S. Patent No.

1

6,804,656 ("the '656 Patent"). (Pl.'s Am. Compl.). The '656 Patent was issued on October 12, 2004 and is entitled "System and Method for Providing Continuous, Expert Critical Care Services From a Remote Location(s)." (Pl.'s Am. Compl. ¶ 7). The '656 Patent facially alleges that Dr. Brian A. Rosenfeld and Dr. Michael Breslow are the inventors of ths '656 Patent and VISICU is the assignee of the '656 Patent. (Pl.'s Am. Compl. ¶ 8).

On the same day the '656 Patent was issued, VISICU began sending letters to Cerner's CEO, Directors, clients and prospective clients regarding VISICU's rights in relation to the '656 Patent. (Pl.'s Am. Compl. ¶16). The letters to Cerner's CEO and its Directors were drafted by VISICU's outside legal counsel, Roberts Abokhair & Mardula, LLC, and provide in their entirety:

> Our firm represents VISICU, Inc. in its various intellectual property matters. VISICU has received the ['656] patent for its remote critical care solution. Thus, VISICU has certain exclusive rights under this patent.
>
> A review of your product offering shows that it may rely on certain aspects of the VISICU technology for which claims have been awarded.
>
> Under U.S. patent law, 35 U.S.C. § 271, a patent entitles its owner to stop any entity from making, using, importing, selling or offering for sale a product that embodies any of the claims in the patent.
>
> In addition, anyone in the distribution chain, including the manufacturer, distributor and user will be liable for infringement, for non-VISICU license products made after the patent issue date. Also, any company officer, or other individual who participates in the decision to manufacture, market or distribute can be personally liable for damages.
>
> Remedies available to patent owners include injunctive relief as well as monetary damages for lost profits, price erosion, convoyed sales, market spoilage, increased costs, accelerated market entry of competitors, reasonable royalties and costs of patent enforcement.
>
> We strongly advise that you contact your own intellectual property counsel to obtain an opinion concerning the VISICU patent and how it relates to your own product offerings. For your convenience, we attach a copy of the issued VISICU patent.
>
> Should you have any questions about VISICU's patent, please do not hesitate to

2

contact me.

(Pl.'s Am. Compl. Ex. B-G). On November 9, 2004, VISICU's CEO sent a follow-up letter to Cerner's CEO. This letter provided:

> I am writing as a follow up to our attorney's letter of October 12, 2004 wherein we notified you of [Patent '656] that was issued to VISICU, Inc. ("VISICU").
>
> You may recall that Cerner previously expressed an interest in licensing VISICU's technology, although that potential business arrangement did not come to fruition. Since that time, we understand that Cerner continues to be interested in systems for intensive care monitoring and control. Therefore, perhaps now would be a good time to again consider a business relationship between Cerner and VISICU.
>
> VISICU remains interested in exploring the possibility of a relationship with Cerner, so please let us know whether there is an opportunity for us to move forward together in this field. I would appreciate the courtesy of a response one way or another.

(Doc. #7, Ex. E). VISICU contends that this letter was intended to "ensure that Cerner understood that VISICU was interested in a mutually beneficial business relationship." (Doc. #7). Cerner contends that the parties did not address a licensing agreement related to the '656 Patent. (Doc. #13).

VISICU's legal counsel also drafted letters to Cerner's current and prospective clients. These letters provided in their entirety:

> Our firm represents VISICU, Inc. in its various intellectual property matters. VISICU has just received the ['656] patent on their eICU® solution for remote care of the critically ill. VISICU is very proud that the U.S. Patent and Trademark Office now recognizes their product offering as novel and inventive. By receiving a grant of letters patent, VISICU now owns exclusive rights for a system providing and supporting 24/7 remote critical care.
>
> VISCIU recognizes that with exclusive rights come new responsibilities. In particular, VISICU, as the new standard in remote critical care, must now support not only its customers, but also those hospital critical units in need of conversion to the eICU solution. By having exclusive patent rights, only VISICU licensed products may be freely utilized for providing remote critical care.

3

> VISICU understands that you have installed, are currently installing, or have contracted to install a remote critical care system manufactured by Cerner. It is not the intention of VISICU to interrupt in any way the care you are affording to your patients, nor is it the intention of VISICU to cause you to breach an contractual arrangements you may have with other vendors. However, we respectfully suggest that you seek written assurance from your information technology vendor that the system now installed or to be installed at your facility(ies) does not infringe the claims of the issued VISICU patent. To protect its interests, VISICU actively polices the market and intends to aggressively pursue infringers that continue selling or utilizing infringing products.
>
> Rest assured that VISICU will implement the necessary hardware and software to convert your existing system to the eICU solution should you so desire. Furthermore, VISICU stands ready to address any training and operational issues that you will require for the conversion.
>
> Should you have any other questions, do not hesitate to contact me.

(Pl.'s Am. Compl. Ex. H, *See also* Ex. I).

Cerner asserts that the solutions currently made, sold and offered for sale by Cerner are not licensed by VISICU to Cerner. (Pl.'s Am. Compl. ¶ 27). Accordingly, Cerner claims "VISICU has explicitly and unequivocally asserted in its letters that Cerner, its distributors, and its clients are currently liable for infringement of the '656 Parent and that VISICU will stop Cerner, its distributors and its clients from making, using, selling, or offering to sell Cerner products." (Pl.'s Am. Compl. ¶ 27). Cerner asserts that the allegations contained in these letters are "unfounded," "baseless," and "interfere with the valuable relationships between Cerner and its existing and prospective clients." (Pl.'s Am. Compl. ¶ 16, 18).

Consequently, Cerner filed this lawsuit against VISICU on November 12, 2004 seeking various declaratory judgments. (Doc. #1). Cerner's original complaint contained seven counts: (1) Declaration of Infringement; (2) Declaration of Invalidity; (3) Declaration of Patent Misuse and Unenforceability; (4) Declaration of Inequitable Conduct and Unenforceability; (5) Declaration of Unfair Competition under 15

U.S.C. § 1125; (6) Declaration of Common Law Unfair Competition; and (7) Declaration of Tortious Interference with Contract and Business Expectancy. Id.

VISICU subsequently moved to dismiss Cerner's claims pursuant to Rule 12(b)(1). (Doc. #6). VISICU argues that this Court does not have declaratory judgment jurisdiction over Cerner's claims under 28 U.S.C. § 2201 because: (1) VISICU's letters to Cerner's officers, directors, clients and prospective clients do not constitute "an explicit threat . . . which creates a reasonable apprehension" that Cerner will face an infringement suit; and (2) Cerner is not engaged in any "present activity" which could constitute infringement and Cerner has not taken any concrete steps to engage in such activity. Id. VISICU further argues that federal question jurisdiction does not exist over Cerner's claims under either 28 U.S.C. § 1331 or 28 U.S.C. § 1338 because there is no federal question or patent question for the Court to resolve. Id. VISICU contends that Count V of Cerner's complaint which purports to assert a claim arising under the Lanham Act (15 U.S.C. § 1125) does not give rise to federal question jurisdiction because it is presented in the context of a declaratory judgment request. Id. Finally, because the Court lacks jurisdiction under 28 U.S.C. §§ 1331, 1338, and 2201, VISICU argues that the Court cannot exercise supplemental jurisdiction over Cerner's state law claims pursuant to 28 U.S.C. § 1367.

Cerner responds that this Court has jurisdiction to hear Cerner's declaratory judgment claims because VISICU's letters to Cerner's officers, directors, clients and prospective clients contained explicit threats that VISICU would file an infringement action to enforce its rights in the '656 Patent. (Doc. #13). Cerner further contends that VISICU has admitted in these letters that Cerner's present product offering could be construed as infringing on the '656 Patent. Id. Additionally, Cerner filed an Amended Complaint in response to VISICU's Motion to Dismiss for lack of subject matter jurisdiction. (Doc. #14). Cerner's

5

Amended Complaint removes the words "declaratory" and "declaration" from its claims in Counts V-VII. (Doc. #14). As such, Count V now asserts a claim for "Unfair Competition Under 15 U.S.C. § 1125," Count VI asserts a claim for "Common Law Unfair Competition," and Count VII asserts a claim for "Tortious Interference with Contract and Business Expectancy." Id. Cerner asserts that these amendments will obviate VISICU's argument that the Court lacks federal question jurisdiction over Count V of Cerner's complaint because the claim was characterized as seeking a "declaration" of unfair competition under the Lanham Act, 15 U.S.C. § 1125.

Recognizing that Count V of Cerner's Amended Complaint no longer asserts a claim for declaratory relief but rather asserts a claim arising under the Lanham Act, VISICU filed a second Motion to Dismiss[1] arguing that Cerner's Lanham Act claim should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted. (Doc. #18). VISICU asserts that Cerner has failed to state a cause of action under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) because the facts asserted by Cerner do not support a finding that VISICU made any "false or misleading statements of fact" in "commercial advertising or promotion." (Doc. #19). Cerner responds to this Motion to Dismiss by arguing that it has set forth sufficient facts to satisfy the notice requirement of Federal Rule of Civil Procedure 8 and that based on these facts, the Court may infer that additional evidence in support of Cerner's Lanham Act claim will be revealed in the discovery process. (Doc. #32).

## II.  VISICU's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1)

---

[1] This second Motion to Dismiss recognized that the first Motion to Dismiss was moot upon the filing of the Amended Complaint. Therefore, in the second Motion to Dismiss VISICU renewed the arguments made in the first Motion to Dismiss regarding this Court's subject matter jurisdiction.

### A. Standard

VISICU argues that Cerner's Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because this Court lacks subject matter jurisdiction over Cerner's claims. Federal courts are courts of limited jurisdiction and "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) *citing* Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); *See also* Godfrey v. Pulitzer Pub. Co., 161 F.3d 1137, 1141 (8th Cir. 1998). The party asserting jurisdiction bears the burden of establishing that a cause lies within the federal court's limited jurisdiction. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). "The first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." Bender, 475 U.S. at 541.

### B. The Court's Subject Matter Jurisdiction over Counts I-IV

Cerner seeks various declaratory judgments in Counts I-IV of its Amended Complaint. VISICU argues that this Court does not have jurisdiction to hear these claims under the Declaratory Judgment Act, 28 U.S.C. § 2201 because an "actual controversy" does not exist between the parties.[2] 28 U.S.C. §

---

[2] VISICU argues that the declaratory judgments sought in Counts I-IV of Cerner's Amended Complaint should be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. The Supreme Court has held that 28 U.S.C. § 2201 does not create an independent source of federal court jurisdiction. *See* Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950). Rather, "the operation of the Declaratory Judgment Act is procedural only." Id. Subject matter jurisdiction over Counts I-IV of Cerner's Amended Complaint is derived from 28 U.S.C. § 1338(a) which confers original jurisdiction on the district courts over "any civil action arising under any Act of Congress relating to patents." The Declaratory Judgment Act limits the Court's jurisdiction in the constitutional sense by requiring the existence of an 'actual controversy' to ensure that the exercise of judicial power is limited to 'cases' and 'controversies' as required by Article III. Sherwood Medical Indus., Inc. v.

7

2201(a) provides in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

The Declaratory Judgment Act, 28 U.S.C. § 2201 is intended to "allow a party who is reasonably at legal risk because of an unresolved dispute to obtain judicial resolution of that dispute without having to await the commencement of legal action by the other side." Capo, Inc. v. Dioptics Medical Prod., Inc., 387 F.3d 1352, 1354 (Fed. Cir. 2004). The Federal Circuit has articulated a two-prong test for analyzing whether an "actual controversy" exists between the parties in patent infringement cases:

> [t]here must be both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity [by the plaintiff] which could constitute infringement or concrete steps taken with the intent to conduct such activity.

BP Chems. Ltd. v. Union Carbide Corp., 4 F.3d 975, 978 (Fed. Cir. 1993).

### 1. *VISICU's threats created an objectively reasonable apprehension that Cerner would be sued for patent infringement.*

To satisfy the first element of the justiciability test, Cerner must prove that VISICU's conduct created an objectively reasonable apprehension that Cerner would be sued for patent infringement. *See* Capo, 387 F.3d at 1355. Cerner's reasonable apprehension that it will face an infringement suit need not be attributed to an "express charge of infringement and threat of suit" by VISICU; "rather, such apprehension may be induced by subtler conduct if that conduct rises to a level sufficient to indicate an

---

Deknatel, Inc., 512 F.2d 724, 726 (8th Cir. 1975) (en banc) *quoting* Aetna Life Insurance Co. v. Haworth, 300 U.S. 227, 239-240 (1937).

intent [on the part of the patentee] to enforce its patent, i.e. initiate an infringement action." EMC Corp. v. Norand Corp., 89 F.3d 807, 811 (Fed. Cir. 1996). The Court finds that the threats uttered by VISICU in its letters to Cerner's CEO, Directors, clients and prospective clients reveal VISICU's intention to enforce its "exclusive rights" in the '656 patent by pursuing remedies provided by federal law.

In its letter to Cerner's CEO and Directors, VISICU states that it has "certain exclusive rights" in the '656 Patent and its review of Cerner's product offering "shows that [Cerner's product offering] may rely on certain aspects of the VISICU technology for which claims have been awarded." VISICU proceeds to inform Cerner that the federal patent laws entitle VISICU to prevent Cerner from "making, using, importing, selling or offering for sale a product that embodies any of the claims in the patent." VISICU expresses its position that "any company officer, or other individual who participates in the decision to manufacture, market or distribute can be personally liable for damages." VISICU advises Cerner's CEO and Directors to "contact your own intellectual property counsel to obtain an opinion concerning the VISICU patent and how it relates to your own product offerings."

In its letters to Cerner's current and prospective clients, VISICU states that it owns "exclusive rights for a system providing and supporting 24/7 remote critical care" and therefore "only VISICU licensed products may be freely utilized for providing remote critical care." VISICU contacted Cerner's current and prospective clients because VISICU became aware that they have "installed, are currently installing, or have contracted to install a remote critical care system manufactured by Cerner." VISICU "respectfully suggests" that the recipient of the letter "seek written assurance from your information technology vendor that the system now installed or to be installed at your facility(ies) does not infringe the claims of the issued VISICU patent." VISICU proceeds to warn Cerner's current and prospective clients

9

that it "actively polices the market and intends to aggressively pursue infringers that continue selling or utilizing infringing products."

In these letters, VISICU does everything but explicitly state its intent to initiate a patent infringement action against Cerner, its CEO and Directors and its current and prospective clients. VISICU grandstands its "exclusive rights" in the '656 Patent and espouses its belief that Cerner's "solutions" infringe on its patent. VISICU expresses its intent to "actively police the market" and "aggressively pursue infringers." VISICU closes the letters by advising Cerner's CEO, Directors, clients and prospective clients to retain legal counsel. VISICU's letters, when viewed in their entirety, are sufficient to give rise to an objectively reasonable apprehension that VISICU would initiate an infringement suit against Cerner, its CEO, Directors, clients and prospective clients.

VISICU contends that these letters were merely part of a "marketing campaign" and that its use of the word "may"[3] and the overall "concilatory tone" of the letters vitiates Cerner's contention that VISICU was threatening to file a patent infringement claim. According to the Federal Circuit, "[t]he test for finding a 'controversy' for jurisdictional purposes is a pragmatic one and cannot turn on whether the parties use polite terms in dealing with one another or engage in more bellicose saber rattling." EMC, 89 F.3d at 811-12. The Court recognizes that VISICU's outside legal counsel is "sensitive to the prospect of a declaratory judgment action" and, therefore, is likely to "couch [its] exchanges in terms designed either to create or defeat declaratory judgment jurisdiction." Id. Focusing on the substance of VISICU's letters, rather than the form, this Court finds that VISICU's statements clearly revealed its intent to protect its

---

[3]VISICU states in its letter to Cerner's CEO and Directors, " . . . [Cerner's product offering] *may* rely on certain aspects of the VISICU technology . . ."

10

rights in the '656 patent by filing an infringement suit under the federal patent laws.

VISICU further argues that its intention to refrain from initiating adversarial litigation is evidenced by the follow-up letter VISICU's CEO sent to Cerner's CEO. In that letter, VISICU's CEO reminds Cerner's CEO of Cerner's "previously expressed interest in licensing VISICU's technology" and invites Cerner to "consider a business relationship" with VISICU in light of VISICU obtaining the '656 Patent. VISICU contends that this letter was intended to "ensure that Cerner understood that VISICU was interested in a mutually beneficial business relationship."

Federal Circuit law states that a letter threatening legal action pursuant to federal patent laws satisfies the first element of the two-prong test for justiciability, even where the defendant subsequently attempts to disavow its prior threats, in the absence of a covenant not to sue. In Fina Research, S.A. v. Baroid Limited, 141 F.3d 1479, 1482-83 (Fed. Cir. 1998), the Federal Circuit found that a patentee's letter to a suspected infringer stating that the patentee considered the subject product to infringe upon its patents and expressing the patentee's intention "to vigorously protect and enforce its rights in the subject patents, including the filing of suit if necessary" was sufficient to create an objectively reasonable apprehension of suit. The court held, "[t]he law states that a letter threatening an infringement suit unless the alleged infringer ceases the offending activity satisfies the first prong of the justiciability test." Fina, 141 F.3d at 1482-83.

In Fina, the Federal Circuit rejected the patentee's argument that it disavowed its threats of litigation by sending a subsequent letter to the suspected infringer stating that the patentee "has not and does not make any claim of infringement" against the suspect infringer. Fina, 141 F.3d at 1483. According to the Federal Circuit, the subsequent letter must "remove the reasonable apprehension of suit that the [initial]

11

threats engender" to negate the existence of an actual controversy. Fina, 141 F.3d at 1483-84. "The issue here is whether [the defendants] have eliminated a reasonable apprehension of suit already in existence, not whether they have created a reasonable apprehension in the first instance." Fina, 141 F.3d at 1484. Pursuant to Federal Circuit precedent, a defendant can only disavow its threats so as to remove the reasonable apprehension of suit that the threats engender by making a covenant not to file suit. Fina, 141 F.3d at 1483-84.[4]

The Fina court's statement of the law is supported by the Federal Circuit's decision in EMC Corp. v. Norand Corp., 89 F.3d 807, 812 (Fed. Cir. 1996) *cert. denied*, 519 U.S. 1101 (1997). In EMC, the patentee sent a letter to the alleged infringer referring to the patentee's inclination to "turn the matter over to" the patentee's litigation counsel "for action," and urging "preliminary business discussion[s]," "perhaps avoiding this matter escalating into a contentious legal activity." EMC, 89 F.3d at 812 (Fed. Cir. 1996). The Federal Circuit found that a letter containing "explicit references to the prospect of initiating legal action" was sufficient to create an objectively reasonable apprehension of suit even though the letters were exchanged in the context of license negotiations between the patentee and the alleged infringer. Id.

VISICU's statements that it intends "to protect its interests" by "actively polic[ing] the market" and

---

[4]The Federal Circuit cites the following cases in support of this proposition of law: Super Sack Mfg. Corp. v. Chase Packaging Corp., 57 F.3d 1054 (Fed. Cir. 1995) (The Fina court noted that in Super Sack, the Federal Circuit held that, "because the patentholder is 'forever estopped by its counsel's statement of nonliability . . . from asserting liability against [the alleged infringer] in connection with any products that [it] made, sold or used,' there was no 'reasonable apprehension that it will face an infringement suit.'"); Spectronics Corp. v. H.B. Fuller Co., 940 F.2d 631, 636 (Fed. Cir. 1991) (The Fina court observed that in Spectronics, the Federal Circuit held that, "by filing with the district court a covenant not to sue the declaratory judgment plaintiff for infringement of the patent, the patentholder was 'forever estopped from asserting the . . . patent claims against the [declaratory judgment plaintiff].'").

12

"aggressively pursu[ing] infringers" are substantively analogous to the patentee's statement in Fina that it intends "to vigorously protect and enforce its rights" in its patent. Like the defendant in Fina, VISICU attempted to distance itself from the threatening statements of its initial letter by sending a subsequent letter suggesting that VISICU and Cerner consider a "business relationship." However, according to the holding in Fina, the issue presented is whether VISICU eliminated a reasonable apprehension of suit already in existence by sending the second letter, not whether VISICU created a reasonable apprehension in the first instance. Pursuant to Federal Court precedent, VISICU's subsequent letter is insufficient to eliminate the reasonable apprehension of suit created by the initial letters because the second letter does not contain a covenant not to sue. Accordingly, VISICU's follow-up letter to Cerner's CEO wherein VISICU purportedly seeks a "business relationship" with Cerner fails to alleviate Cerner's objectively reasonable apprehension of impending patent litigation.

This Court finds that VISICU's aggressive marketplace conduct cannot be construed as "consistently informative, rather than adversarial" as VISICU contends. No legitimate "marketing campaign" includes sending certified letters from outside counsel to a competitor's officers, directors, clients and prospective clients threatening the initiation of a patent infringement action. VISICU's conduct can only be construed as a clear warning that VISICU would initiate a patent infringement suit against Cerner, its CEO, Directors, clients and prospective clients, if Cerner continued selling and marketing its "solutions" for providing critical care to patients in intensive care units. Cerner should not be expected to sit idly by in a state of competitive purgatory and wait for VISICU to initiate legal action against it and its officers, directors, and clients. As such, this Court finds that the threats contained in the letters VISICU sent to Cerner's CEO, Directors, and current and prospective clients give rise to an "objectively reasonable

13

apprehension" that VISICU would sue Cerner for patent infringement.

### 2. *Cerner's present activity could constitute infringement*.

The second element of the two-prong inquiry requires Cerner to "present evidence indicating that it has actually produced a[n infringing] device . . . or has actually prepared to produce such a device at the time it filed its declaratory judgment." Jervis B. Webb Co. v. Southern Sys., Inc., 742 F.2d 1388, 1399 (Fed. Cir. 1984). Cerner openly admits that it made, sold and offered to sell products – referred to in the industry as "solutions" – used for providing critical care to patients in intensive care units. Cerner's solutions have been implemented and are being used by at least one Cerner client and, according to the Amended Complaint, Cerner intends to continue to sell its solutions.

VISICU argues that Cerner has failed to offer any evidence that it is producing or is prepared to produce a product that infringes on VISICU's '656 patent. However, VISICU's argument diametrically contradicts VISICU's statement in the letters it sent to Cerner's CEO and Directors that VISICU's review of Cerner's "product offering shows that it may rely on certain aspects of the VISICU technology for which claims have been awarded." VISICU could not have reviewed Cerner's product offerings if Cerner was not producing any products. Similarly, in the letters VISICU's counsel wrote to Cerner's current and potential customers, VISICU states that it "understands that you have installed, are currently installing or have contracted to install a remote critical care system manufactured by Cerner . . . we respectfully suggest that you seek written assurance from your information technology vendor that the system installed or to be installed at your facility(ies) does not infringe the claims of the issued VISICU patent." By this statement, VISICU implies that the remote critical care system presently being produced by Cerner infringes on VISICU's '656 patent. Accordingly, this Court finds that Cerner has presented sufficient evidence, by way

14

of VISICU's own admissions, that Cerner's present activity could be construed as infringing on the '656 patent.

### C. The Court's Subject Matter Jurisdiction over Count V

Cerner has alleged in Count V of its Amended Complaint that VISICU violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) by making false and misleading statements to its current and potential customers regarding Cerner's product offerings vis-à-vis VISICU's rights in the '656 Patent. The Lanham Act itself vests this Court with original jurisdiction over this claim. *See* 15 U.S.C. § 1121(a).[5] Furthermore, the Lanham Act is a federal statute; therefore, this Court has subject matter jurisdiction over Cerner's claims based on the assertion of a federal question. *See* 28 U.S.C. § 1331.[6] Finally, this Court has original jurisdiction over Cerner's Lanham Act claim because it "relates to" the '656 Patent and is "joined with a substantial and related claim under the . . . patent . . . laws." *See* 28 U.S.C. § 1338(a) and (b).[7] Accordingly, this Court unquestionably has subject matter jurisdiction over Cerner's Lanham Act claim.

---

[5] 15 U.S.C. § 1121(a) provides: "The district and territorial courts of the United States shall have original jurisdiction . . . of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

[6] 28 U.S.C. § 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States."

[7] 28 U.S.C. § 1338(a) provides: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents, plant variety protection, copyrights and trademarks. Such jurisdiction shall be exclusive of the courts of the states in patent, plant variety protection and copyright cases." 28 U.S.C. § 1338(b) provides: "The district courts shall have original jurisdiction of any civil action asserting a claim of unfair competition when joined with a substantial and related claim under the copyright, patent, plant variety protection or trademark laws."

Case 4:04-cv-01033-GAF   Document 54   Filed 09/26/05   Page 15 of 20

### D.     *The Court's Subject Matter Jurisdiction over Counts VI-VII*

As this Court has original subject matter jurisdiction over Cerner's Lanham Act claim, this Court will exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367[8] over the state law claims asserted in Counts VI-VII of Cerner's Amended Complaint.

## III.    VISICU's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

### A.     *Standard*

VISICU filed its second Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) alleging that Cerner has failed to state a claim under the Lanham Act upon which relief may be granted. A Rule 12(b)(6) motion tests the sufficiency of the complaint. Bennett v. Tyson Foods, Inc., 2005 WL 1668147, *2 (E.D. Mo. 2005). Dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." McCormick v. Aircraft Mechanics Fraternal Ass'n, 340 F.3d 642, 644 (8th Cir. 2003).

When considering this Motion, the Court will assume that all facts alleged in the complaint are true and liberally construe those allegations in a light most favorable to Cerner. *See* Midwestern Machinery, Inc. v. Northwest Airlines, Inc., 167 F.3d 439, 441 (8th Cir. 1999). "A motion to dismiss should not be granted merely because a complaint does not state with precision every element of the offense necessary for recovery." Bennett v. Tyson Foods, Inc., 2005 WL 1668147, *2 (E.D. Mo. 2005). Furthermore,

---

[8]U.S.C. § 1367(a) provides in relevant part: ". . . [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution . . ."

16

a complaint "should not be dismissed merely because the court doubts that a plaintiff can prove all of the necessary factual allegations." Krentz v. Robertson, 228 F.3d 897, 905 (8th Cir. 2000). "A complaint is sufficient if it contains allegations from which an inference can be drawn that evidence on these material points will be introduced at trial." Bennett v. Tyson Foods, Inc., 2005 WL 1668147, *2 (E.D. Mo. 2005).

"The issue on a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of his or her claims." Ajiwoju v. Cottrell, 2005 WL 1026702, *1 (W.D. Mo. 2005). "Thus, a motion to dismiss should be granted as a practical matter only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Ajiwoju, 2005 WL 1026702, *1.

### B. *Analysis*

Cerner contends that VISICU violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) which provides:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

VISICU contends that Cerner's Amended Complaint must be dismissed pursuant to Rule 12(b)(6) because the facts asserted by Cerner in its Amended Complaint do not support a finding that VISICU made any "false or misleading statements of fact" in "commercial advertising or promotion."

17

In its Amended Complaint, Cerner alleges that VISICU sent letters to Cerner's CEO and its Directors asserting that "VISICU has certain exclusive rights" in the '656 Patent. VISICU asserts that it has reviewed Cerner's product offering and believes "that it may rely on certain aspects of the VISICU technology for which claims have been awarded." VISICU proceeds to threaten that "anyone in the distribution chain . . . will be liable for infringement" and "any company officer, or other individual who participates in the decision to manufacture, market or distribute can be personally liable for damages."

Additionally, Cerner alleges in its Amended Complaint that VISICU also sent letters to Cerner's current and prospective clients contending that "VISICU now owns exclusive rights for a system providing and supporting 24/7 remote critical care." VISICU proceeds to inform Cerner's current and prospective clients that "[b]y having exclusive patent rights, only VISICU licensed products may be freely utilized for providing remote critical care." VISICU then states, "VISICU understands that you have installed, are currently installing, or have contracted to install a remote critical care system manufactured by Cerner." VISICU advises Cerner's current and prospective clients to "seek written assurance from your information technology vender that the system now installed or to be installed at your facility(ies) does not infringe the claims of the issued VISICU patent." VISICU then notifies Cerner's current and prospective clients that it "actively policies the market and intends to aggressively pursue infringers that continue selling or utilizing infringing products."

In summary, Cerner's Amended Complaint alleges that:

VISICU has subjected Cerner and its officers, directors, clients, prospective clients, and others to: (1) unfounded allegations that they are infringing the '656 Patent; (2) threats and warnings that VISICU will aggressively pursue and initiate legal action against any and all alleged infringers of the '656 Patent, including Cerner; and (3) baseless assertions that Cerner's solutions will not reach the market as a result of VISICU's alleged patent rights.

18

The Court does not find that Cerner is required to specifically plead in its Amended Complaint all the requisite facts to establish that VISICU made "false or misleading statements of fact" in "commercial advertising or promotion" to avoid dismissal under Rule 12(b)(6). Based on these allegations, the Court can infer that Cerner has additional evidence of VISICU's alleged violation of 15 U.S.C. § 1125(a)(1)(B) that will be produced at trial. Accordingly, the Court rejects VISICU's argument that Cerner's Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

Requiring Cerner to plead with specificity every fact supporting its claim for unfair competition under 15 U.S.C. § 1125 would contravene the notice-pleading standards of the Federal Courts and the requirement of Federal Rule of Civil Procedure 8 that the complaint need only provide the court with a "short and plaint statement of his claim for relief." The Defendants have failed to highlight any facts which appear on the fact of Cerner's Amended Complaint which present an insuperable bar to relief. As Cerner has complied with Rule 8 and the allegations in Cerner's Amended Complaint give rise to an inference that further evidence on its unfair competition claim may be presented at trial, VISICU's Motion to Dismiss pursuant to Rule 12(b)(6) is DENIED.

## CONCLUSION

The Court has jurisdiction to hear Cerner's various declaratory judgment claims (Counts I-IV) because an "actual controversy" exists between the parties. The threats uttered by VISICU in its letters to Cerner's CEO, Directors, clients and prospective clients created an objectively reasonable apprehension that Cerner would be sued for patent infringement. These letters further revealed that Cerner's present product offering could be construed as infringing on the '656 Patent. The Court has subject matter jurisdiction based on the existence of a federal question to hear Cerner's Lanham Act claim (Count V) and,

19

by extension, this Court has supplemental jurisdiction over Cerner's state law claims (Counts VI-VII). Accordingly, VISICU's Motion to Dismiss pursuant to Rule 12(b)(1) is DENIED. (Doc. #6).

Furthermore, this Court finds that the factual allegations included in Cerner's Amended Complaint are sufficient to support an inference that additional evidence will be uncovered in the discovery process to establish Cerner's Lanham Act claim. Accordingly, VISICU's Motion to Dismiss Count V of Cerner's Amended Complaint pursuant to Rule 12(b)(6) is DENIED. (Doc. #18).

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: September 26, 2005